UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| NANCY JANET RODRIGUEZ,<br>    Plaintiff,<br> v.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | Case No. ED CV 14-1253-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On June 25, 2014, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 3). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10). On September 17, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 12-13). The parties filed a Joint Position Statement ("Joint

Stip.") on January 9, 2015, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 15).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed June 26, 2014 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On May 24, 2011, Plaintiff, formerly employed as a staffing recruiter and a cashier (see AR 32, 221, 247), filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability since September 12, 2009. (AR 193-208). On September 14, 2012, Administrative Law Judge ("ALJ"), James Nguyen, heard testimony from Plaintiff and vocational expert Sandra Fioretti. (See AR 25-62). On September 28, 2012, the ALJ issued a decision denying Plaintiff's application. (See AR 10-19). After determining that Plaintiff had severe impairments -- "degenerative joint disease and degenerative disc disease in the lumbar spine with disc bulges and bilateral facet hypertrophy and narrowing; Baker's cyst in the right knee; medial meniscus tear of the right knee; status post right knee arthroscopy; and right sacroiliac joint pain syndrome" (AR 12-14)[1] --, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light

---

[1] The ALJ found that anxiety was a nonsevere impairment. (AR 13).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

2

work[3] with the following restrictions: occasional climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; use of the right lower extremity for occasional pushing or pulling; a sitting/standing option so she can sit 30 minutes at a time before having to shift to a standing or walking position; and the ability to stand or walk 15 minutes before sitting again. (AR 14-17). After finding that Plaintiff was not able to perform her past relevant work as a cashier and staffing recruiter (AR 17), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17-19).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 5). The request was denied on April 18, 2014. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) consider that Plaintiff's severe back and knee impairments resulted in a 12-month closed period of disability (June 2010 to June 2011); and (2) develop the record regarding Plaintiff's treating physician for the 12-

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

month closed period of disability (June 2010 to June 2011). (See Joint Stip. at 3-4, 6-8, 10).

**DISCUSSION**

**A. The ALJ Properly Considered Whether Plaintiff was Disabled for the Alleged Closed Period (June 2010 to June 2011)**

Plaintiff asserts that the ALJ failed to consider whether Plaintiff was disabled for a closed period (June 2010 to June 2011). (See Joint Stip. at 3-4). Defendant asserts that the ALJ properly determined that Plaintiff was not disabled for that closed period or for any period. (See Joint Stip. at 5).

Plaintiff relies on the following evidence as support for her assertion that she was disabled from June 2010 to June 2011: (1) Statements in a March 12, 2010 report prepared by Peter Sofia, M.D., at the Orthopaedic Medical Group of Riverside, Inc., indicating that (a) Plaintiff stated that on September 12, 2009, she was walking in a 99 Cents store when she slipped and fell on some soap and landed directly on her buttocks which caused her to suffer severe lower back pain since then; (b) subsequent to her injury and apparently at the request of another physician (Dr. Sharma), X-rays and MRI scans were taken of Plaintiff's lower back and right knee and Plaintiff also was complaining of right knee pain; (c) Dr. Sharma, who last saw Plaintiff on March 3, 2010, advised Plaintiff that her that her back was not bad enough to have surgery but recommended knee surgery; and (d) Plaintiff was referred by her primary care doctor to orthopedic specialists for

4

further evaluation and care (see AR 356); (2) Statements in a June 3, 2010 report prepared by David Doty, M.D., at Orthopaedic Medical Group of Riverside, Inc., indicating that (a) Plaintiff, after a long discussion, stated that she wanted to proceed with arthroscopy of the right knee, but deferred scheduling the procedure until determining whether she was pregnant; and (b) if Plaintiff is pregnant, the procedure would have to wait until after her delivery (see AR 373); (3) On September 14, 2010, Plaintiff, who was diagnosed with low back pain with lumbar radiculitis, right sacroiliac joint pain syndrome and right piriformis pain syndrome, underwent the following procedures: placement of spinal needles under fluroscopy, lumboscaral epidurogram, a right side transforaminal lumbosacral epidural steroid injection under fluroscopy, a right sacroiliac joint injection, and a right piriformis/perisciatic nerve block (see AR 383-84); (4) Plaintiff's testimony that she had arthroscopy of the right knee (see AR 40) on April 21, 2011 (see AR 345, 418-20); (5) Statements in a June 1, 2011 evaluative note prepared by Richard Blum-Johnston, a physical therapist at Physical Therapy Center (Dr. Doty had referred Plaintiff to physical therapy for her right knee, see AR 347-48) indicating that (a) Plaintiff was complaining of constant pain in the front and back of her knee; and (b) "Patient presents five weeks Post Op Right Knee Arthroscopy with limitations in AROM, strength and functional ability as related to walking and closed chain ability" (see AR 345-46); (6) Statements by physical therapist Blum-Johnston in a report dated June 14, 2011 indicating that: (a) Plaintiff "is improving with in [sic] the expected time frame" and "is walking without any assistive device and her [range of motion] is increasing as is strength;" and (b) Plaintiff should "be able to do some form of work in the near future" (see AR 342); and (7)

Plaintiff's testimony that she experienced back, knee and hip pain during the time she was attending physical therapy in 2010 and 2011 (see AR 41, 44, 48). (See Joint Stip. at 3-4).

Plaintiff contends that the ALJ, "in his consideration of the medical evidence in the record as a whole, [ ] did not fully and fairly discuss the possibility of awarding this "closed period" [June 2010 through June 14, 2011] for [P]laintiff's twelve months of continuous disability. The record includes abundant allegations of physical limitations during this period." (Joint Stip. at 4).

The Court finds that Plaintiff has mischaracterized the medical evidence of record. Although Plaintiff states, "Due to post-operative mechanical pain, she began sessions of physical therapy, which specifically included the use of a cane as an assistive device to enable walking and standing," (Joint Statement at 4), she has not cited to any evidence in the record showing any prescribed assistive device. Indeed, at Plaintiff's first physical therapy session on June 1, 2011, the physical therapist stated, "Patient presents as a healthy female walking with a decreased right side stride and no assistive device." (AR 345).

Moreover, Petitioner's contention that the evidence was sufficient for the ALJ to find that Plaintiff was disabled based on her lower back and knee impairments for the closed period (June 2010 to June 2011] appears to be inconsistent with Petitioner's contention that the ALJ failed to fully develop the record for this period (see Joint Stip. at 6-8). Although Plaintiff now appears to accept her physical therapist's

June 14, 2011 statements (see Joint Stip. at 4), she was highly dismissive of them at the hearing (see AR 41-42).

Contrary to Plaintiff's implied assertion, the ALJ considered the evidence of Plaintiff's physical limitations during the closed period at issue (June 2010 to June 2011), as well as all of the evidence in the record, including the medical records and testimony on which Plaintiff is relying. (See AR 14-16, summarizing AR 28-55 [Plaintiff's hearing testimony], 232-46 [Plaintiff's Function Report - Adult, dated June 14, 2011], 259-67 [Plaintiff's Daughter's Function Report - Adult - Third Party, dated June 27, 2011], 287-98 [records from Arrowhead Regional Medical Center from September 2009], 298-303 [records from Oracle Imaging Services, Inc. from October 2009 and February 2010], 304-09 [records from Excel Physical Therapy for the period of December 2010 through February 2011], 310-335 [records from La Salle Medical Group, including records from Palm Imaging Institute and Quest Diagnostics Incorporated, for June 2009, September 2009, March/April 2010, December 2010, and February 2011], 336-40 [records from Metropolitan Family Medical Clinic, Inc., including a record from LabWest, for April 2011], 341-51 [records from Physical Therapy Center for June 2011], and 352-430 [records from Orthopaedic Medical Group of Riverside, Inc., for the period of September 2009 to August 2011]).

The ALJ properly determined Plaintiff's RFC, finding that (1) Plaintiff's testimony regarding the severity of her symptoms and limitations was not fully credible based on contradictory statements, inconsistencies with the objective medical evidence, and Plaintiff's conservative treatment for her ailments (see Molina v. Astrue, 674 F.3d

1104, 1113 (9th Cir. 2012)("Even where those [daily activities] suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work history, and testimony from physicians and third parties concerning the nature, severity, and effect on the symptoms of which he complains."); (2) the treatment records (which included the records for the closed period of June 2010 to June 2011) did not support greater functional restrictions, let alone a finding of disability; (3) Plaintiff's treating physical therapist opined in June 2011 that Plaintiff's knee was improving in strength and range of motion and Plaintiff would be able to work without an assistive device; and (4) the July 11, 2011 opinion of non-examining physician, A. Wong, M.D., that Plaintiff could perform light work with occasional postural limitations (see AR 63-73) was consistent with the medical evidence, with the exception of the preclusion from climbing ladders, ropes and scaffold (see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)["The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings and evidence in the record."]; Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989)["To the extent that other physicians' conflicting opinions rested on independent, objective findings, those opinions could constitute substantial evidence."]. (See AR 14-17).

Thus, substantial evidence supports the ALJ's finding that Plaintiff can perform light work, with limited restrictions, including for the closed period from June 2010 to June 2011 (see AR 17 ["The undersigned finds the claimant has not been deprived of the ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since the alleged onset date."]). See Sangathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)("Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")(citation omitted).

**B.  The ALJ Did Not Fail to Fully and Fairly Develop the Record for the Alleged Closed Period of Disability (June 2010 to June 2011)**

Plaintiff asserts that the ALJ failed to fully and fairly develop the record regarding Plaintiff's treating physicians, Dr. Leung and others at Orthopaedic Medical Group of Riverside, Inc., for the closed period of disability (June 2010 to June 2011). (See Joint Stip. at 7-8, 10). Defendant asserts that the ALJ did not fail to fully and fairly develop the record. (See Joint Stip. at 9-10).

On May 16, 2011, Bryant C. Leung, M.D., at Orthopaedic Medical Group of Riverside, Inc., prepared a report of Plaintiff's visit that day. (AR 422-24). (Although Plaintiff had been receiving treatment at Orthopaedic Medical Group of Riverside, Inc. since September 23, 2009, see AR 353-55, Dr. Leung first saw Plaintiff on May 21, 2010, see AR 366-71). Dr. Leung noted that Plaintiff was complaining of pain in her lower back "with intermittent numbness and tingling sensation" and

9

reported that the pain was worse with activities including sitting, walking and standing. Dr. Leung's clinical findings included inter alia the following: (1) Plaintiff's gait was "[s]table, limping due to right knee pain; there was tenderness on palpation over the midline ("mild L4-S2"), the lumbrosacral paraspinal region ("L4-S1, R>L mild to mod"), the PSIS/buttock/SI join piriformis ("right, mild to mod."), and the "right GT region;" and (2) Plaintiff's motor exam showed "[g]ive-way weakness, right leg with right knee pain;" and that Plaintiff's sensory was "[t]o light touch, gross intact today, intermittent numbness right leg." Dr. Leung diagnosed Plaintiff with the following: "[l]ow back pain with lumbar radiculitis/sciatica, right lower extremity;" "L5-S1 5-mm herniatic disc;" "[l]umbar radiculitis/radiculopathy;" "[r]ight sacroiliitis/SI joint pain syndrome;" "[r]ight piriformis pain syndrome;" "[r]ight lateral hip/thigh pain;" "[r]ight GT bursitis/ITB syndrome;" and "S/p right knee operation by Dr. Doty". In the Treatment Plan section, Dr. Leung stated the following: for low back pain, continue conservative treatment with physical therapy, home exercise program, and medication as needed, continued knee treatment with Dr. Doty (and noted Plaintiff was waiting for physical therapy for the knee), continue medications (including Tylenol) for the knee and the back and discontinue Ultram, possible injection therapy for future back pain flare up - "monitor clinically for now," and a follow-up in 6 weeks. (See AR 422-24).

Plaintiff contends that the ALJ had a duty to contact Dr. Leung and other physicians who treated Plaintiff during the alleged closed period (June 2010 to June 2011) "for the purpose of determining what [P]laintiff's residual functional capacity would have been during her

alleged closed period." Plaintiff further contends that "[i]n the present matter, it is improper for the ALJ to completely fail to attempt to obtain any treating physician commentary supporting the severity of [P]laintiff's impairments **during the proposed closed period**, and to give them their due weight. (Joint Stip. at 7)((emphasis in original). According to Plaintiff, had the ALJ obtained all necessary opinion evidence, "the ALJ may have come to a different conclusion regarding [P]laintiff's impairments and/or additional physical limitations regarding [P]laintiff's ability to perform work-related functions." (See Joint Stip. at 8).

Although an ALJ has a duty to fully and fairly develop the record and assure that a claimant's interests are considered, see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983), the ALJ did not fail to do so here. This is not a case where there is "ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(citations omitted); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.")(citations omitted). In addition, this is not a case where there is a gap in the medical evidence. See Widmark v. Barnhart, 454 F.3d 1063, 1068-69 (9th Cir. 2006).

Accordingly, the ALJ did not have a duty to recontact Plaintiff's treating physicians, including Dr. Leung, to obtain their opinions about

the severity of Plaintiff's impairments during the alleged closed period.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 21, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE